UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHELLE ALARIO                                    CIVIL ACTION

VERSUS                                             NO. 09-5440

OFFSHORE SERVICE VESSELS, LLC, ET AL.              SECTION "L" (4)

ORDER & REASONS

Before the Court is Defendant Offshore Service Vessels, LLC's Motion for Summary Judgment (R. 21). The Court has considered the parties' briefs, as well as the applicable law and relevant facts, and is now ready to rule. For the following reasons, the Defendant's Motion is GRANTED IN PART and DENIED IN PART.

I.      BACKGROUND

This case arises from injuries allegedly sustained aboard a vessel. Plaintiff Michelle Alario was hired by Defendant in April 2006 as a vessel cook. On November 26, 2007, in this capacity, Plaintiff was working aboard the C-ESCORT while the vessel was servicing the rig DEEPWATER MILLENNIUM in the Gulf of Mexico. She retired to her cabin on that day and went to bed, only to awake after a few hours. It was when she began to arise from her bed and move towards the door that Plaintiff alleges the rocking of the vessel caused her to lose her balance, stumble across the room, and strike her right shoulder and arm on the opposite wall.

On December 14, 2007, Plaintiff began receiving medical treatment for complaints of right arm and shoulder pain resulting from this incident. After conservative care failed to resolve her complaints, on April 22, 2008, she underwent a right transverse carpel ligament release under the care of Dr. Jonathan Shults. However, Plaintiff continued to complain of wrist and

1

elbow pain, and on June 30, 2008, she underwent a right lateral epicondyle release. Plaintiff thereafter underwent physical therapy, but did not report any improvement in her condition and was referred to Dr. Jamie Huddleston, a neurologist, for a second opinion. In late 2008 and early 2009, Dr. Huddleston performed cervical MRI and a repeat EMG. Dr. Huddleston recommended that Plaintiff return to work with a restriction against lifting more than 30 pounds without appropriate support.

In February 2009, Plaintiff returned to Dr. Shults who opined that Plaintiff had reached maximum medical improvement and recommended she undergo a FCE to determine whether work restrictions were appropriate. The FCE was performed on April 15, 2009, demonstrating that Plaintiff was capable of returning to work with certain weight lifting restrictions. In March 2009, Dr. Huddleston likewise recommended that the Plaintiff return to work with weight lifting restrictions.

Due to continued symptoms, Plaintiff sought a second opinion from Dr. William Kinnard, an orthopedic surgeon, who found no evidence of serious pathology in Plaintiff's neck or shoulder, and recommended Plaintiff see a pain management specialist. Accordingly, Plaintiff sought treatment from Dr. Jimmy Ponder on May 6, 2010, during which Dr. Ponder recommended updated x-rays and MRI of the cervical spine and right shoulder. However, these tests were not conducted because of Plaintiff's inability to pay.

More recently, on August 16, 2010, Plaintiff sought treatment from Chabert Medical Center, during which an EMG and NCS were performed. These tests revealed moderate median entrapment neuropathy and an acute lower cervical radiculapathy. Plaintiff is scheduled to return to Chabert in January 2011 for diagnosis and treatment options.

Over the course of Plaintiff's treatment, she has been paid $55,685 in advances against past lost wages, $10,628 in maintenance, and $30,268.15 in cure.

On August 4, 2009, Plaintiff filed a Complaint (R. 1) alleging that her injuries were proximately caused by the negligence of Defendant and the unseaworthiness of the vessel. Plaintiff seeks damages for loss of past and future income, past and future medical expenses, and all maintenance and cure to which she is entitled. Defendant filed an Answer (R. 4), denying liability and raising several affirmative defenses.

Trial in this matter was originally scheduled for October 4, 2010, but because Plaintiff's latest medical test results would not be available by that time, the Court continued the trial until January 18, 2011. *See* (R. 17). Thereafter, on November 29, 2010, Plaintiff filed a Motion to Continue Trial on the basis that Plaintiff's injuries were still undiagnosed and untreated, requiring more time to produce evidence of her injury. (R. 22). The Court denied this Motion. (R. 26). Additionally, on this same date, Plaintiff filed a Motion to Compel seeking an order requiring Defendant to produce ten of its employees for depositions. (R. 23). This Motion was set for hearing before the Magistrate, and on December 16, 2010, the Motion was denied on the basis that Plaintiff failed to notice the depositions before the discovery deadline, failed to seek leave in doing so, and lacked good cause. (R. 35).

## II.   PRESENT MOTION

### A.   Defendant's Motion

Defendant filed the present Motion seeking summary judgment on both liability and maintenance and cure. On liability, Defendant argues that Plaintiff has failed to produce any evidence that would suggest it lacked ordinary care, failed to exercise ordinary prudence, or that

3

the vessel was unseaworthy. Rather, according to Defendant, Plaintiff merely alleges that she fell as a result of rough sea conditions, ordinary for that time in the Gulf and similar to what she had experienced before.

As to Plaintiff's maintenance and cure claim, Defendant contends that because Dr. Shults has opined that Plaintiff has reached maximum medical improvement, and no other physician has disagreed with that conclusion or even recommended a different course of treatment, summary judgment is appropriate on this issue.

### B. Plaintiff's Response

Plaintiff has filed a Response in opposition to Defendant's Motion. (R. 28). With regard to her Jones Act claim, Plaintiff asks the Court to defer consideration on this issue until the Magistrate's decision on her Motion to Compel is made.

As to her maintenance and cure claim, Plaintiff contends that there exists a genuine issue of material fact as to the nature of her injury and the need for further medical treatment. Plaintiff refutes Dr. Shult's opinion that she has reached maximum medical improvement on the basis that this opinion is based upon Dr. Huddleston's report. Plaintiff alleges that the tests run by Chabert Medical Center resulted in abnormal findings, revealing moderate median entrapment neuropathy and acute lower cervical radiculapathy, and notes that she is scheduled to return to Chabert in January 2011 for more definitive diagnosis and treatment options.

### C. Defendant's Reply

Defendant filed a Reply to Plaintiff's Response, contending that Plaintiff's Jones Act and unseaworthiness claims are ripe for consideration, and the undisputed facts demonstrate Plaintiff's maintenance and cure claim fails since she has reached maximum medical

improvement. (R. 33). Because Plaintiff's accident was unwitnessed, Defendant claims that the depositions of the ten crew members sought by Plaintiff in her Motion to Compel would have no bearing on the Jones Act and unseaworthiness issues, and moreover, the deadline for discovery has long since passed. Additionally, Defendant reiterates that there is no evidence in the record contradicting Plaintiff's treating physician's opinions.

## III.     LAW & ANALYSIS

### A.     Standard of Review

Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed R. Civ P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Brown v. City of Houston*, 337 F.3d 539, 540-41 (5th Cir. 2003). A material fact is a fact which, under applicable law, may alter the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 271 F.3d 624, 626 (5th Cir. 2001). A dispute is genuine when a reasonable finder of fact could resolve the issue in favor of either party, based on the evidence before it. *Anderson*, 477 U.S. at 250; *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). "The moving party bears the burden of demonstrating that there exists no genuine issues of material fact." *In re Vioxx Prods. Liab. Litig.*, 501 F.Supp.2d 776, 781 (E.D. La. 2007). When considering a motion for summary judgment, the Court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir. 2004). If the party moving for summary judgment demonstrates the

absence of a genuine issue of material fact "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

Furthermore, the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id*. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case on which they bear the burden of proof. *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). A non-movant's conclusory allegations or bare assertions unsupported by facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48.

### B.      Jones Act & Unseaworthiness Claims

As discussed above, Plaintiff alleges both a Jones Act claim and an unseaworthiness claim against the Defendant. The Jones Act provides a seaman injured in the course of employment with the right to bring a civil action at law, including the right of trial by jury, *see* 46 U.S.C. § 30104(a), and thus "create[s] a statutory cause of action for negligence." *Atl. Sounding Co., Inc. v. Townsend*, 129 S.Ct. 2561, 2570 (2009). Under the Jones Act, an employer owes its employees a duty to use reasonable care to provide a safe place to work. *Verret v. McDonough Marine Serv.*, 705 F.2d 1437, 1441 (5th Cir. 1983). However, this standard of care does not hold employers to a higher duty of care than required under ordinary negligence. *See Gautreaux v. Scurlock Marine*, *Inc*., 107 F.3d 331, 339 (5th Cir. 1997). This duty is simply one of ordinary prudence under the circumstances. *Id*.

Independent of its duty under the Jones Act, a shipowner or operator of a vessel owes a duty to furnish a seaworthy ship to members of the vessel's crew. *The Osceola*, 189 U.S. 158 (1903); *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549 (1960). The duty of seaworthiness is absolute, but "it is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use." *Id.* at 550. The owner is not "'obligated to furnish an accident-free ship.'" *Park v. Stockstill Boat Rentals, Inc.*, 492 F.3d 600, 604 (5th Cir. 2007)(quoting *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550 (1960)). For a vessel to be found unseaworthy, the seaman must establish a causal connection between his injury and the breach of duty that rendered the vessel unseaworthy. *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001). The standard required to prove causation for unseaworthiness is more strict than for a Jones Act claim of negligence. *Comeaux v. T.L. James & Co., Inc.*, 702 F.2d 1023, 1025 (5th Cir. 1983). Causation in unseaworthiness requires a showing of "proximate causation in the traditional sense." *Id.*

Plaintiff's Complaint alleges that she fell and was injured "due to the violent motions" of the vessel. (R. 1). Immediately prior to her accident, Plaintiff testified that she sat up in her bunk-bed, put her left foot on the floor, and grabbed the bunk above her. *See* Pl.'s Dep. (Dec. 14, 2009). It was when she went to pull herself up from the bed that Plaintiff claims she flew across the cabin due to the rocking of the vessel, and struck her right shoulder and arm on the door. *See id.* When asked at her deposition whether she had experienced similar weather conditions on the vessel before the night of her accident, Plaintiff responded, "Yes. And worse, way worse." *Id.* Plaintiff also stated at her deposition, "I should have crawled on the floor, huh? I would have saved myself a lot of agony." *Id.* Further, Plaintiff agreed that the presence of railing in her cabin at the time of the accident would not have necessarily prevented her injuries.

7

*See id.* Based upon the allegations and deposition testimony cited above, the Court is unable to conclude that there exist any genuine issues of material fact as to Plaintiff's Jones Act and unseaworthiness claims. Plaintiff fails to establish that her injuries were the fault of the Defendant or due to problems with the Defendant's vessel.

This Court has found negligence or unseaworthiness for injuries on vessel related to rough seas when such injuries result from the seaman being required to work in areas that become especially dangerous during rough seas. *See e.g. Complaint of Sirret Offshore Towing Co., Inc.*, 1997 WL 539923, at *3 (E.D. La. Sept. 2, 1997)(finding Jones Act negligence and unseaworthiness where seamen injured by falling on slippery surface exacerbated by moderate to rough seas); *Matter of Complaint of Theriot Crew Boats, Inc.*, 1996 WL 495154, at *3 (E.D. La. Aug. 29, 1996)(finding negligence under the Jones Act where captain decided to ride out storm in aluminum crewboat causing seaman on the boat injuries). Here, Plaintiff was not required to work during the rough seas. Rather, she was off-duty and in the confines of her cabin at the time of her injuries. *See* Pl.'s Dep. There is no evidence that the seas at the time in question were unusually rough or unsafe for the area and time of year. Even the Plaintiff concedes that she has been in rougher seas. *See* Pl.'s Dep.

Additionally, the Fifth Circuit has affirmed summary judgment rulings finding no negligence and/or unseaworthiness where a seaman was injured while boarding a vessel in rough seas. *See Walker v. United States,* 5 F.3d 1495 (5th Cir. 1993); *Meyers v. M/V Eugenio C*, 919 F.2d 1070, 1072 (5th Cir. 1990). Plaintiff's attempt to cross her cabin during rough seas is arguably an inherently safer activity than boarding a vessel and would require less of an owner/employer in protecting Plaintiff from her injuries, all of which lends in favor of summary

judgment on liability.

Furthermore, the Fifth Circuit in *Park v. Stockstill Boat Rentals, Inc.*, 492 F.3d 600, 604-05 (5th Cir. 2007), held that a seaman's unseaworthiness claim failed where he alleged he was injured by slipping on the deck as a result of the deck's faded, old paint. Therein, the Circuit reiterated the summary judgment standard while concluding,

> It is not enough for [plaintiff] to rest on mere conclusory allegations or denials in his pleadings. [Plaintiff] must point out, with factual specificity, evidence demonstrating the existence of genuine issue of material fact on every component of his case. [Plaintiff's] mere assertion that the [vessel's] paint was old and faded is insufficient to raise a fact issue on whether the paint rendered the vessel unseaworthy. *Park*, 492 F.3d at 605 (internal citations omitted).

Similarly, here, Plaintiff fails to demonstrate genuine issues of material fact for both her Jones Act and unseaworthiness claims; merely alleging that the rough seas, and nothing else, caused her to fall and strike her shoulder and arm does not satisfy this standard.

The Magistrate Judge recently denied Plaintiff's Motion to Compel the deposition of ten of her crewmates. Although the court is not clear as to how these depositions would provide support to Plaintiff's Jones Act and unseaworthiness claims, undoubtedly, without these depositions, the Court does not have any additional evidence sufficient to overcome summary judgment on these claims. *See* (R. 35).

Finally, Plaintiff failed to respond to Defendant's Motion as it pertains to her Jones Act and unseaworthiness claims, other than asking the Court to defer its ruling until after the Magistrate issues her ruling on the Plaintiff's Motion to Compel. *See* (R. 28). The Magistrate's ruling has since issued, but no substantive challenges to the liability claims have been raised by Plaintiff; thus Plaintiff has failed to carry her burden of showing material factual issues exist. *See Bustos v. Martini Club, Inc.*, 599 F.3d 458, 469 (5th Cir. 2010). Based upon the foregoing,

summary judgment is granted in favor of Defendant on Plaintiff's Jones Act and unseaworthiness claims.

### C. Maintenance & Cure Claim

When a seaman becomes ill or injured while in the service of his ship, the shipowner must pay her maintenance and cure regardless of whether the shipowner was at fault or whether the ship was unseaworthy. *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1499 (5th Cir. 1995). "Maintenance" is defined as the right of a seaman to food and lodging if he falls ill or becomes injured while in the service of the vessel, whereas "cure" is the right of the seaman to necessary medical services. *Id.* It is well-settled that a determination to terminate a seaman's right to maintenance and cure must be unequivocal; payments may be terminated only when it is determined that the seaman has reached maximum medical improvement. *Johnson v. Marlin Drilling Co.*, 893 F.2d 77, 79 (5th Cir. 1990). The point of maximum medical improvement has been determined to be when "it appears probable that further medical treatment will result in no betterment of the seaman's condition." *Gaspard v. Taylor Diving & Salvage Co., Inc.*, 649 F.2d 372, 374 n.3 (5th Cir. 1981). Any ambiguities or doubts in the application of maintenance and cure are to be resolved in favor of the seaman. *Liner v. J.B. Talley & Co.*, 618 F.2d 327, 332 (5th Cir. 1980).

As discussed above, one doctor has determined that Plaintiff has reached maximum medical improvement, and another has similarly determined that Plaintiff is ready to return to work, albeit with lifting restrictions. *See* (R. 21, Exs. B-G). However, Plaintiff has demonstrated, based upon the tests conducted at the Chabert Medical Center, the possibility, perhaps remote, that she has not reached maximum medical improvement. *See* (R. 28, Exs. 2, 3).

This is sufficient to overcome summary judgment on maintenance and cure, especially given that any ambiguities or doubts as to a seaman's right to maintenance and cure are to be resolved in favor of the seaman. *Liner*, 618 F.2d at 332.

The Court also finds that it is appropriate to permit Plaintiff the opportunity to produce evidence of her Chabert diagnosis and treatment options. Plaintiff will not find out this information until near or after the scheduled trial date, and thus continuance of the trial and pretrial dates is required. Accordingly, IT IS ORDERED that the current trial date of January 18, 2011 is cancelled, and the pretrial conference is converted into a telephone status conference to select new dates and discuss the remaining maintenance and cure issues.

## IV.     CONCLUSION

For the foregoing reasons, Defendant Offshore Service Vessels, LLC's Motion for Summary Judgment (R. 21) is GRANTED IN PART and DENIED IN PART.

New Orleans, Louisiana, this 7th day of January 2011.

*[signature: Eldon E. Fallon]*
U.S. DISTRICT JUDGE